## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Julene M., individually and on behalf of Brendon M., | : : : | CIVIL ACTION |
| v. | : | |
| William Penn School District | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| 03/16/2020 | Jennifer Sang | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-564-1030 | 347-695-2489 | jysang@berneylaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Julene M., individually and on behalf of Brendon M.

**(b)** County of Residence of First Listed Plaintiff   Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Berney & Sang, 1628 JFK Blvd, Suite 1000, Phila., PA 19103

## DEFENDANTS
William Penn School District

County of Residence of First Listed Defendant   Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Jason Fortenberry, Esq.   Sweet Stevens Katz Wiliiams

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☒ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C. § 1400 et seq., 29 U.S.C. § 794, and 42 U.S.C. § 12131
Brief description of cause:
Violation of the Individuals with Disabilities in Education Act, Section 504, and the ADA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
03/16/2020

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 900 Myra Avenue, Lansdowne, PA 19050 _____

Address of Defendant: _____ 100 Green Avenue, Administration Building, Lansdowne, PA 19050 _____

Place of Accident, Incident or Transaction: _____ William Penn School District _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/16/2020 _____ _____ 310617
*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

| A. | Federal Question Cases: | B. | Diversity Jurisdiction Cases: |
|---|---|---|---|
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | ☐ 5. | Motor Vehicle Personal Injury |
| ☐ 6. | Labor-Management Relations | ☐ 6. | Other Personal Injury *(Please specify):* _____ |
| ☐ 7. | Civil Rights | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | ☐ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | *(Please specify):* _____ |
| ☑ 11. | All other Federal Question Cases | | |
| | *(Please specify):* _____ IDEA, Section 504, & ADA _____ | | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Jennifer Sang _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 03/16/2020 _____ _____ 310617
*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 900 Myra Avenue, Lansdowne, PA 19050 _____

Address of Defendant: _____ 100 Green Avenue, Administration Building, Lansdowne, PA 19050 _____

Place of Accident, Incident or Transaction: _____ William Penn School District _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/16/2020 _____   *Attorney-at-Law / Pro Se Plaintiff*   310617 _____
*Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.  Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
*(Please specify):* _____ IDEA, Section 504, & ADA _____

**B.  Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Jennifer Sang _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 03/16/2020 _____   *Attorney-at-Law / Pro Se Plaintiff*   310617 _____
*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Julene M., individually and on<br>behalf of Brendon M., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. _____ |
| | : | |
| William Penn School District, | : | |
| | : | |
| Defendant. | : | |

## <u>COMPLAINT</u>

### PRELIMINARY STATEMENT

1.     This action is brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (IDEA), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (Section 504), and the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (ADA).

2.     Plaintiff Julene M. (Parent), individually and on behalf of her child, B.M., prevailed in a special education due process hearing against the William Penn School District. The Hearing Officer's Decision (HOD) is attached as Exhibit A.

3.     Parent prevailed on all of her claims and obtained all of the relief she sought except the hearing officer did not rule on Parent's claims under Section 504 and the ADA which Parent appeals pursuant to this action.

4.     Parent seeks judgment under the IDEA, Section 504, and the ADA.  Parent also seeks her statutory attorney's fees and costs under those statutes for the instant action and the underlying administrative proceeding.

**JURISDICTION**

5.      Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory provisions.

6.      Venue in this district is proper under 28 U.S.C. § 1391(b).

**PARTIES**

7.      Parent is B.M.'s mother.

8.      Parent resides with B.M. within the borders of the William Penn School District.

9.      The William Penn School District (District) is a governmental unit that administers the public schools within its boundaries.

10.      The District is a local educational agency (LEA) within the meaning of the IDEA. The District is also a "program or activity" receiving federal financial assistance under Section 504. The District is also a "public entity" under the ADA.

**STATUTORY AND REGULATORY BACKGROUND**

11.      The IDEA was enacted to "ensur[e] children with disabilities and the families of such children [receive] access to a free appropriate public education and [to] improve[e] educational results for children with disabilities." 20 U.S.C. § 1400(c)(3).

12.      The IDEA and its implementing regulations require LEAs that receive funds under the IDEA to provide school age residents who have disabilities with a free and appropriate public education (FAPE). *See* 20 U.S.C. § 1401(9); 34 C.F.R. § 300.17.

13.      The IDEA further confers upon LEAs the requirement to offer an Individualized Education Program (IEP) for each child with a qualifying disability. 20 U.S.C. § 1412(a)(4).

14.     FAPE requires that a student receive IEPs that are reasonably calculated to provide meaningful educational progress. *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000).

15.     If an LEA fails to offer FAPE to one of its students, the IDEA and its implementing regulations provide parents and their children with certain procedural safeguards, including the right to file a due process complaint to remediate the denial of FAPE. 20 U.S.C. § 1415(b)(7).

16.     If an LEA failed to appropriately evaluate her child, Parent may be entitled to an independent educational evaluation at public expense (IEE). 34 C.F.R. § 300.502(b).

17.     If an LEA has failed to offer FAPE to a student and parents enroll the student in a private school, parents may be entitled to reimbursement for the costs of the private school enrollment. 20 U.S.C. § 1412(a)(10)(C)(ii).

18.     Section 504 also requires that students with disabilities be provided access to FAPE. In addition, Section 504 prohibits the exclusion of, or discrimination against, any otherwise qualified individual with a disability by federal fund recipients.

19.     The ADA extends the nondiscrimination rule of Section 504 to services provided by any "public entity" without regard to whether the entity is a recipient of federal funds.

20.     Section 504 and the ADA require LEAs to provide educational services to meet the individual needs of a student with a disability "as adequately as the needs of the non-handicapped persons." 34 C.F.R. § 104.33(b)(1); 28 C.F.R. § 35.130. In addition, Section 504 and the ADA require LEAs to afford students with disabilities an opportunity equal to that of nondisabled students to participate in and benefit from an LEA's aids, benefits, and services. *See, e.g.,* 34 C.F.R. § 104.4 (a), (b)(i), and (b)(ii).

21.     A prevailing parent is also entitled to statutory attorney's fees and litigation costs under the IDEA 20 U.S.C. §§ 1415(i)(3)(B) and (C), Section 504, 29 U.S.C. §794a, and the ADA, 42 U.S.C. § 12205. Under Section 504 and the ADA, related litigation costs also include expert fees.

## STATEMENT OF FACTS

22.     B.M. is currently in ninth grade.

23.     B.M. attends Hill Top Preparatory School (Hill Top), a private school that serves children with disabilities.

24.     B.M. is a "child with a disability" within the meaning of the IDEA, 20 U.S.C. § 1402(3)(A). As a result of those disabilities, B.M. is entitled to special education services.

25.     B.M. is an "individual with a disability" within the meaning of Section 504 and the ADA.

26.     B.M. is otherwise qualified to participate in school activities within the meaning of Section 504 and the ADA.

27.     The District receives federal funding.

28.     Because the District failed to adequately evaluate B.M. and had failed to offer B.M. FAPE for the 2019-2020 school year, Parent enrolled B.M. in Hill Top, a private school, for the 2019-2020 school year.

29.     On or about June 11, 2019, Parent filed an administrative due process complaint alleging that the District failed to adequately evaluate B.M. and had failed to offer an IEP that was reasonably calculated to provide FAPE.

30. In her due process complaint, Parent sought reimbursement for an IEE arising from the District's inadequate evaluation and tuition reimbursement from the District for the costs associated with B.M.'s enrollment at Hill Top for the 2019-2020 school year.

31. The parties litigated the matter before an administrative hearing officer.

32. On December 23, 2019, the hearing officer found that the District had both failed to adequately evaluate B.M. and had failed to offer FAPE to B.M. As a result, the hearing officer awarded Parent an IEE and tuition reimbursement for the costs associated with enrolling B.M. at Hill Top.

## CAUSES OF ACTION

### Count I -- Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.

33. Parent incorporates the above and below paragraphs as though fully set forth herein at length.

34. Section 504 prohibits federal fund recipients from excluding or discriminating against any otherwise qualified individuals with a disability. Failure to provide accommodations and supplemental services constitutes discrimination under Section 504.

35. A Section 504 violation exists where a student, who is disabled pursuant to Section 504 and is 'otherwise qualified' to participate in school activities, is excluded from participation in, denied the benefits of, or subject to discrimination by a federal fund recipient.

36. When a school district fails to provide a disabled child with FAPE, it violates Section 504.

37. As established by the Hearing Officer's decision, B.M. is disabled as defined by Section 504. *See* Exhibit A.

38. B.M. is otherwise qualified to participate in school activities. *See* Exhibit A.

39.     The District is federal funding recipient.

40.     B.M. was excluded from participation in, denied the benefits of, and/or subjected to discrimination by the District.  *See* Exhibit A. Specifically, the District failed to adequately evaluate B.M. and failed to offer B.M. FAPE.

## Count II  - Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

41.     Parent incorporates the above and below paragraphs as though fully set forth herein at length.

42.     The ADA requires that public schools: a) not discriminate against students on the basis of disability; and b) provide reasonable accommodations to students with disabilities.

43.     Under the ADA, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by such entity.

44.     B.M. is disabled under the ADA.

45.     B.M. is a qualified individual with a disability under the ADA.

46.     The District is a public entity under the ADA.

47.     The District is responsible for providing services, programs and or activities to school age children who reside within its geographic borders.

48.     By reason of B.M.'s disabilities, the District excluded B.M. from participation in, denied B.M. the benefits of, and/or subjected B.M. to discrimination.

49.     The District violated B.M.'s rights under the ADA by*, inter alia*:

        a.      denying B.M., on the basis of his disabilities, the opportunity to participate
                in and benefit from education services, programs, and activities, including

academic and nonacademic services and school activities, in violation of 42

U.S.C. § 12131(2) and 28 C.F.R. § 35.130(a);

b.        subjecting B.M. to discrimination on the basis of his disability, in violation

of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(a);

c.        failing to provide B.M. an opportunity to participate in and benefit from

education and other services that is equal to the opportunity afforded students

without disabilities, in violation of 28 C.F.R. § 35.130(b)(ii);

d.        failing to provide B.M. with educational and other services that are as

effective in affording equal opportunity as the services provided to students

without disabilities, in violation of 28 C.F.R. § 35.130(b)(iii); and

e.        failing to provide B.M. certain adaptations and accommodations, in

violation of 28 C.F.R. § 35.130(b)(7).

## Count III  - IDEA, 20 U.S.C. §§ 1400 *et seq.*

50.     Parent incorporates the above and below paragraphs as though fully set forth

herein at length.

51.     The IDEA and its implementing regulations require school districts to adequately

evaluate students with qualifying disabilities.

52.     The IDEA and its implementing regulations require school districts to offer an

IEP that is reasonably calculated to provide FAPE.

53.     As stated above, the Hearing Officer found that the District had failed to

adequately evaluation B.M.

54.     As stated above, the Hearing Officer found that the District had failed to offer

B.M. an IEP that was reasonably calculated to provide FAPE.

55.     The Hearing Officer awarded Parent the relief that Parent had requested in her

due process complaint.

56.     Parent is a prevailing party under the IDEA.

57.     Parent has the right to her statutory attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Parent respectfully requests the following: (1) that judgment be entered

against District, (2) that reasonable attorney's fees and litigation costs be awarded for the

underlying administrative matter and in prosecuting this action, and (3) for all other relief that

this Court may deem appropriate.

BERNEY & SANG,


_____
JENNIFER SANG,
Pa. Bar ID No. 310617
DAVID J. BERNEY, ESQUIRE
Pa. Bar ID No. 67882
8 Penn Center
1628 JFK Boulevard, Ste. 1000
Philadelphia, PA 19103
jysang@berneylaw.com
djberney@berneylaw.com
215-564-1030 (office)
215-751-9739 (fax)
Attorneys for Parent Julene M.

Dated: March 16, 2020

# EXHIBIT A

**Pennsylvania Special Education Due Process Hearing Officer
Final Decision and Order**

**Closed Hearing**

**ODR File Number**
22355-1819

**Child's Name**



**Date of Birth**



**Parent(s)/Guardian(s)**

**Counsel for Parent(s)/Guardian(s)**
Jennifer Y. Sang, Esquire
8 Penn Center
1628 JFK Boulevard, Suite 1000
Philadelphia, PA 19103

**Local Educational Agency**
William Penn School District
100 Green Avenue
Lansdowne, PA 19050

**Counsel for LEA**
Jason Fortenberry, Esquire
331 E. Butler Avenue
New Britain, PA 18901

**Hearing Officer**
Brian Jason Ford, JD, CHO

**Date of Decision**
12/23/2019

1

## Introduction

This special education due process hearing concerns the educational rights of a student (the Student).[1] The Student's parent (the Parent) requested this hearing against the Student's School District (the District).

The Student attended a private placement (Private School 1) from the 2015-16 school year though the 2018-19 school year pursuant to written agreements between the Parent and the District. The final agreement between the parties established an agreed-to procedure to reevaluate the Student and offer a special education placement within the District for the 2019-20 school year. The Parent alleges that the District violated the agreement and offered an inappropriate special education placement.

The Parent argues that the District's actions and inactions violate the Student's rights under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. There is no dispute that the District is the Student's local educational agency (LEA) or that the Student is a "child with a disability" as defined by the IDEA at 20 U.S.C. § 1401.

The Parent demands a District-funded independent educational evaluation (IEE), and tuition reimbursement for the Students attendance at a different private school (Private School 2) during the 2019-20 school year.

For reasons addressed below, I find in favor of the Parent.

## Issues

The issues presented for adjudication are:

1. Is the Student entitled to an IEE at public expense?

2. Is the Parent entitled to tuition reimbursement for the Student's attendance at the Private School during the 2019-20 school year?

## Findings of Fact

I carefully considered the record of this matter in its entirety. I make findings of fact only as necessary to resolve the issues presented.

---

[1] Except for the cover page of this document, personally identifying information is omitted to the extent possible.

I find as follows:

## Private School 1 Placement

1.  On February 23, 2015, the Parent and the District executed a Settlement Agreement and Release placing the Student in the Private School 1 at the District's expense.

2.  On August 28, 2017, the Parent and the District executed another Settlement Agreement and Release (the 2017 Settlement).[2] S-3.

3.  The 2017 Settlement is a type of agreement commonly referred to as an "in lieu of FAPE"[3] agreement. The Parent agreed to accept the consideration provided through the agreement "in full satisfaction of the provision of any offer of a [FAPE] or any educational placement, program, or services provided by the District for the Student from the beginning of time until the first day of the 2019-20 school year…" S-3 ¶ 1. *See also* S-3 ¶¶ 13, 14.

4.  Through the 2017 Settlement, the District agreed to pay for the following:

    a.  The Student's participation in the Private School 1's summer program during the summer of 2017. S-3 ¶ 1(a).

    b.  The Student's tuition to attend the Private School 1 during the 2017-18 school year. S-3 ¶ 1(b).

    c.  The Student's participation in the Private School 1's summer program during the summer of 2018. S-3 ¶ 1(c).

    d.  The Student's tuition to attend the Private School 1 during the 2018-19 school year. S-3 ¶ 1(d).

5.  The 2017 Settlement explicitly contemplates the Student's return to the District in the 2019-20 school year. Specifically, the District and Parent agreed that:

    a.  The "District shall conduct a reevaluation of the Student, which will commence at any point after January 1, 2019." S-3 ¶ 10.

---

[2] The Parent signed the 2017 Settlement on August 8, 2017, and the District signed on August 28, 2017.
[3] FAPE is a Free Appropriate Public Education – further explained and discussed below.

3

    b. The Parent gave consent for the reevaluation through the 2017 Settlement. S-3 ¶ 10.

    c. "The reevaluation report shall be completed and mailed or hand-delivered to the Parent by March 30, 2019…"[4] S-3 ¶ 10.

    d. The Parent reserved the right to challenge the adequacy of the reevaluation. S-3 ¶ 10.

6. The 2017 Settlement explicitly contemplates a dispute arising between the parties regarding the Student's educational placement or program for the 2019-20 school year. Specifically, the parties agreed that:

    a. The District will offer a special education program and placement through an Individualized Education Program (IEP) and Notice of Recommended Educational Placement (NOREP) for the 2019-20 school year. S-3 ¶ 11.

    b. If the District offers an IEP and NOREP for the 2019-20 school year on or before April 30, 2019, the IEP and NOREP, not Private School 1, "or any other private school," constitute the Student's pendent placement during any dispute.[5] S-3 ¶ 11.

    c. If the District fails to offer an IEP and NOREP by April 30, 2019, the parties agreed that the Student's pendent placement "shall be a school of the Parent's choice capped at the then-current [Private School 1] tuition unless the delay to offer an IEP is due to the Parent."[6] S-3 ¶ 11.

**2017 Private Evaluations**

7. Around July 28, 2017, the Parent obtained a private Psycho-Educational Evaluation of the Student. The Parent did not provide that to the District until May 20, 2019. S-50.

---

[4] The sentence goes on to address what would have happened if the Student left the Private School earlier than the parties expected.

[5] The IDEA's pendency or "stay put" rule prohibits LEAs from unilaterally changing a child's special education placement while a due process hearing or other litigation is pending. *See* 34 C.F.R. § 300.518(a).

[6] As discussed below, the parties anticipated the Student aging out of Private School 1 at the end of the 2018-19 school year.

8.    On August 31, 2017, the Parent obtained a private
      Neuropsychological Re-Evaluation of the Student. The Parent did
      not provide that to the District until May 15, 2019. S-51.

9.    Both of the 2017 private evaluations reveal significant problems
      with the Student's attention, behavior, social skills, and pragmatic
      language abilities. Both concluded that the Student should be
      diagnosed with Autism Spectrum Disorder. Neither conclude that
      the Student is a child with an Emotional Disturbance. S-50, S-51.

### 2019 Reevaluation, IEP, and NOREP

10.   On April 5, 2019, the District started a reevaluation by reviewing
      existing evaluation data in its possession. S-52 at 1.

11.   The District determined that additional data was needed and
      attempted to conduct a Psychoeducational Reevaluation. S-52 at 8.

12.   The District contacted the Parent on April 10, 2019 to schedule
      testing. The District also reached out to the Private School. The
      District wanted to test the Student during the week of April 15. The
      Student was scheduled for PSSA testing that week, and the
      Student's private BCBA advised that the reevaluation and PSSA
      testing together would be too stressful for the Student. The Private
      School relayed that information to the District. The Parent also
      explained the situation to the District on April 12, 2019. P-26.

13.   The District proposed no other dates and did not test the Student
      directly. *See* P-26, S-52.

14.   The District's psychologist sent two rating scales to the Parent on
      April 15, 2019. Those were a BASC-3 and a SAED-2.[7] The District's
      psychologist provided the same rating scales to the Student's
      teacher at the Private School. The Parent completed and returned
      both rating scales on April 16, 2019. The teacher also completed
      and returned the rating scales. P-26, S-52.

15.   The District finalized its reevaluation and provided it to the Parent
      on April 29, 2019 (the 2019 RR). S-52 at 8.

---

[7] The BASC-3 is the Behavior Assessment System for Children, Third Edition. The SAED-2 is
the Scales for Assessing Emotional Disturbance, Second Edition.

16.   On April 29, 2019 (the same day that the 2019 RR was finalized),
      the District convened the Student's IEP team and presented a draft
      IEP. S-54.

17.   The Parent attended the IEP team meeting with an educational
      consultant. During the IEP team meeting, the Parent and the
      consultant shared that the Student had been diagnosed with
      Autism. They expressed their belief that Autism, not an Emotional
      Disturbance, was the Student's proper IDEA classification. The
      Parent had not previously mentioned any concerns about Autism to
      the District. NT 148-150, 176, 197, 199-201, 264, 272-273.

18.   At the time of the 2019 IEP team meeting, the District did not have
      the 2017 private evaluations. *Supra*.

19.   During the IEP team meeting, the Parent and the District agreed to
      further testing to explore the Parent's concerns about Autism. *Id*.
      There is no record, however, of the District ever proposing another
      evaluation or attempting to complete the Psychoeducational
      Reevaluation referenced in the 2019 RR.

20.   The District revised the draft IEP shortly after the IEP team
      meeting. The revisions were based on the IEP team's discussion
      during the meeting. S-54, S-55, P-15.

21.   The District added a statement about possible pragmatic language
      concerns, replaced a math application goal with a math word
      problems goal, and added goals for completing long-term
      assignments and daily homework, and for generalizing strategies to
      deal with frustration. *C/f* S-54, S-55.

22.   Goals for using coping strategies during times of stress, following
      directions and remaining on task, appropriately gaining staff
      attention, and writing remained the same. *C/f* S-54, S-55.

23.   Program modifications and specially designed instruction (SDI)
      were also revised. The substantive difference between the draft and
      the revision is small. Generally, the revisions clarified language to
      reflect skills that the District would teach to the Student.[8] *C/f* S-54,
      S-55.

---

[8] For example, the draft called for the District to "chunk" or break down the Student's
assignments into manageable pieces. The revision specified that the District would teach the
Student how to do that work instead of relying upon teachers.

24.  In the revised IEP, SDI included (among other things) small group instruction in all core subject areas, small group testing, extended time on tests, direct instruction in mindfulness and coping skills for 30 minutes per day, and assistance with planned transitions. S-55.

25.  No changes were made to the Student's IDEA classification or related services or supports for school personnel. The draft and the revision both provided behavior consultation once per month; individual 30-minute counseling sessions, four times per month; and group 30-minute counseling sessions, four times per month. *C/f* S-54, S-55.

26.  Both the draft and revised IEP offered an Emotional Support placement at the supplemental level. The revision, however, increased the Student's time in regular education classrooms from 2.75 hours per day to 3.15 hours per day. *C/f* S-54, S-55.

27.  A Positive Behavior Support Plan (PBSP) was attached to both the draft and revised IEPs and was not edited. *C/f* S-54, S-55.

28.  The District finalized the revised IEP (S-55) and issued that with a NOREP to the Parent via email on April 30, 2019. P-15.

29.  The NOREP places the Student in a District-run program housed within one of the District's schools. The program is called the New School. The NOREP describes the New School as "a non-traditional therapeutic high school classroom setting and program within the district, for supplemental emotional support and therapeutic counseling." P-29.

30.  The District offered to let the Parent tour the New School. After some back and forth emails, the District permitted the Parent's educational consultant to tour the New School as well. P-31.

31.  Children attending the New School receive core academic instruction through pre-recorded online lessons, although a regular education teacher is also in the room. Students attending the New School take Physical Education and one elective class with students from the District's general (regular) education classes. NT 225.

7

32.     The Parent rejected the NOREP on May 9, 2019.[9] P-29.

33.     On May 9, 2019, the Parent sent an email to the District expressing their believe that the IEP and NOREP were inappropriate and requesting a private placement at the District's expense for the summer of 2019 and the 2019-20 school year. The email does not specify any private placement. P-30.

## Private School 2

34.     Private School 1 ends in 8th grade, and so the Student could not remain at Private School 1 in the 2019-20 school year. *Passim*.

35.     During the 2018-19 school year, the Parent began exploring other private schools and learned about Private School 2.

36.     In January 2019, the Parent set up two visitation days for the Student. The Student shadowed another student at Private School 2 for two full school days on January 15 and 16, 2019. P-36.

37.     Sometime shortly after the Student's visit, Private School 2 determined that the Student was a good fit for its program and offered admission to the Student. The offer was made on an undated form letter.[10] P-37.

38.     Private School 2 sent an enrollment contract to the Parent with the admission letter.[11] P-37, P-38. The Parent signed the enrollment contract. I make no finding as to when the Parent signed the enrollment contract. However, the Parent wrote July 9, 2019 in the date lines following the digital signature.[12]

---

[9] The Parent's signature on the NOREP is dated May 8, 2019. The Parent returned the NOREP to the District via email on May 9, 2019.

[10] It appears that the admission letter was sent to the Parent electronically, but there is no record of any such email in evidence. While such an email would establish the exact date, I find that the admission offer was sent very shortly after the Student's visit based on the text of the letter.

[11] Like the admission letter, I believe that evidence showing when the Parent received the enrollment contract exists but was not produced. My finding that the admission letter and the enrollment contract were sent at the same time is based on the text of the letter.

[12] The Parent filed the Complaint  initiating these proceedings on June 11, 2019. The complaint includes a demand for tuition reimbursement at an unspecified private school. If the date on the enrollment contract is correct, the Parent signed the enrollment contract 28 days after initiating this hearing.

39. Private School 2 holds itself out as a private, college preoperatory school for children with "complex learning differences" such as ADHD, auditory and visual processing disorders, written expression disorders, social skills deficits, "high functioning Autism," anxiety disorders, and executive functioning deficits. P-34.

40. At Private School 2, the Student receives a "Personal Education Plan," not an IEP. NT 682. The Student's Personal Education plan was not presented at this hearing.

**Witness Credibility**

During a due process hearing, the hearing officer is charged with the responsibility of judging the credibility of witnesses, and must make "express, qualitative determinations regarding the relative credibility and persuasiveness of the witnesses." *Blount v. Lancaster-Lebanon Intermediate Unit*, 2003 LEXIS 21639 at *28 (2003). One purpose of an explicit credibility determination is to give courts the information that they need in the event of judicial review. *See, D.K. v. Abington School District*, 696 F.3d 233, 243 (3d Cir. 2014) ("[Courts] must accept the state agency's credibility determinations unless the non-testimonial extrinsic evidence in the record would justify a contrary conclusion."). *See also, generally David G. v. Council Rock School District*, 2009 WL 3064732 (E.D. Pa. 2009); *T.E. v. Cumberland Valley School District*, 2014 U.S. Dist. LEXIS 1471 *11-12 (M.D. Pa. 2014); *A.S. v. Office for Dispute Resolution (Quakertown Community School District)*, 88 A.3d 256, 266 (Pa. Commw. 2014); *Rylan M. v Dover Area Sch. Dist.*, No. 1:16-CV-1260, 2017 U.S. Dist. LEXIS 70265 (M.D. Pa. May 9, 2017).

In this case, to the extent witnesses testified as fact witnesses, I find that all witnesses testified credibly. To the very limited extent that different witnesses testified to contradictory facts, I find that the discrepancy is due to honest differences in memory.

The Parents called an educational consultant to testify as both a fact witness and as an expert witness. To the extent that this witness gave opinion testimony, that testimony was not credible and is afforded no weight. Although the witness explicitly denied working as an advocate for the Parent or Student, there is simply no other way to define her work for the family.[13] The witness did not evaluate the Student or write a report. This places the

---

[13] The witness testified that her background and credentials made her different than an advocate. I agree that few non-attorney advocates share the witness' credentials. Her work in this case, however, was clearly advocacy.

witness's opinion testimony on a very shaky foundation. From that shaky foundation, the witness proceeded to render opinions grounded almost exclusively upon unsupported assumptions about the services available within the District, and the profile of students that the District places into various programs. Often, it was difficult to separate the witness's observations from her assumptions. I have no doubt that the witness has personally observed a host of special education placements in a wide variety of schools. That does not give the witness an ability to render an opinion about what is and is not available in this District.

To be clear, to the extent that the Parent's consultant testified as a fact witness regarding the Student or the placement within the District that she observed, I find her testimony credible.

## Applicable Legal Principles

### The Burden of Proof

The burden of proof, generally, consists of two elements: the burden of production and the burden of persuasion. In special education due process hearings, the burden of persuasion lies with the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *L.E. v. Ramsey Board of Education*, 435 F.3d 384, 392 (3d Cir. 2006). The party seeking relief must prove entitlement to its demand by preponderant evidence and cannot prevail if the evidence rests in equipoise. *See N.M., ex rel. M.M. v. The School Dist. of Philadelphia*, 394 Fed.Appx. 920, 922 (3rd Cir. 2010), *citing Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). In this particular case, the Parent is the party seeking relief and must bear the burden of persuasion.

### Free Appropriate Public Education (FAPE)

The IDEA requires the states to provide a "free appropriate public education" to all students who qualify for special education services. 20 U.S.C. §1412. Local education agencies meet the obligation of providing a FAPE to eligible students through development and implementation of IEPs, which must be "'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" *Mary Courtney T. v. School District of Philadelphia*, 575 F.3d 235, 240 (3d Cir. 2009) (citations omitted). Substantively, the IEP must be responsive to each child's individual educational needs. 20 U.S.C. § 1414(d); 34 C.F.R. § 300.324. This long-standing Third Circuit standard was confirmed by the United States Supreme Court in *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988 (2017).

The *Endrew F.* case was the Court's first consideration of the substantive FAPE standard since *Board of Educ. of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206-07, 102 S.Ct. 3034 (1982). In *Rowley*, the Court found that a LEA satisfies its FAPE obligation to a child with a disability when "the individualized educational program developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits." *Id* at 3015.

Historically the Third Circuit has interpreted *Rowley* to mean that the "benefits" to the child must be meaningful, and the meaningfulness of the educational benefit is relative to the child's potential. *See T.R. v. Kingwood Township Board of Education*, 205 F.3d 572 (3rd Cir 2000); *Ridgewood Bd. of Education v. N.E.*, 172 F.3d 238 (3rd Cir. 1999); *S.H. v. Newark*, 336 F.3d 260 (3rd Cir. 2003). In substance, the *Endrew F.* decision in no different.

A school district is not required to maximize a child's opportunity; it must provide a basic floor of opportunity. *See, Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290 (7th Cir.), *cert. denied*, 488 U.S. 925 (1988). However, the meaningful benefit standard requires LEAs to provide more than "trivial" or "*de minimus*" benefit. *See Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 1179 (3d Cir. 1998), *cert. denied* 488 U.S. 1030 (1989). *See also Carlisle Area School v. Scott P.*, 62 F.3d 520, 533-34 (3d Cir. 1995). It is well-established that an eligible student is not entitled to the best possible program, to the type of program preferred by a parent, or to a guaranteed outcome in terms of a specific level of achievement. *See, e.g., J.L. v. North Penn School District*, 2011 WL 601621 (E.D. Pa. 2011). Thus, what the statute guarantees is an "appropriate" education, "not one that provides everything that might be thought desirable by 'loving parents.'" *Tucker v. Bayshore Union Free School District*, 873 F.2d 563, 567 (2d Cir. 1989).

The *Endrew F.* case does not change the fact that schools need not maximize a child's potential to comply with the law. However, in *Endrew F.*, the Supreme Court effectively agreed with the Third Circuit by rejecting a "merely more than *de minimus*" standard, holding instead that the "IDEA demands more. It requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. 988, 1001 (2017).

Appropriate progress, in turn, must be "appropriately ambitious in light of [the child's] circumstances." *Id* at 1000. In terms of academic progress, grade-to-grade advancement may be "appropriately ambitious" for students capable of grade-level work. *Id*. Education, however, encompasses much

11

more than academics. Grade-to-grade progression, therefore, is not an absolute indication of progress even for an academically strong child, depending on the child's circumstances.

In sum, the essence of the standard is that IDEA-eligible students must receive specially designed instruction and related services, by and through an IEP that is reasonably calculated at the time it is issued to offer an appropriately ambitious education in light of the Student's circumstances.

## Tuition Reimbursement

A three-part test is used to determine whether parents are entitled to reimbursement for special education services. The test flows from *Burlington School Committee v. Department of Education of Massachusetts*, 471 U.S. 359 (1985) and *Florence County School District v. Carter*, 510 U.S. 7 (1993). This is referred to as the "*Burlington-Carter*" test.

The first step is to determine whether the program and placement offered by the LEA is appropriate for the child. The second step is to determine whether the program obtained by the parents is appropriate for the child. The third step is to determine whether there are equitable considerations that merit a reduction or elimination of a reimbusement award. *Lauren W. v. DeFlaminis*, 480 F.3d 259 (3rd Cir. 2007). The steps are taken in sequence, and the analysis ends if any step is not satisfied.

## Evaluation and Reevaluation Criteria

The IDEA establishes requirements for evaluations. Substantively, those requirements are the same for initial evaluations and revaluations. 20 U.S.C. § 1414. Evaluations must "use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent, that may assist in determining" whether the child is a child with a disability and, if so, what must be provided through the child's IEP in order for the child to receive FAPE. 20 U.S.C. § 1414(b)(2)(A).

Further, the evaluation must "not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child" and must "use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors". 20 U.S.C. § 1414(b)(2)(B)-(C).

In addition, the District is obligated to ensure that:

12

assessments and other evaluation materials... (i) are selected
and administered so as not to be discriminatory on a racial or
cultural basis; (ii) are provided and administered in the language
and form most likely to yield accurate information on what the
child knows and can do academically, developmentally, and
functionally, unless it is not feasible to so provide or administer;
(iii) are used for purposes for which the assessments or
measures are valid and reliable; (iv) are administered by trained
and knowledgeable personnel; and (v) are administered in
accordance with any instructions provided by the producer of
such assessments.

20 U.S.C. § 1414(b)(3)(A).

Finally, evaluations must assess "all areas of suspected disability". 20 U.S.C.
§ 1414(b)(3)(B).

## IEE at Public Expense

Parental rights to an IEE at public expense are established by the IDEA and
its implementing regulations: "A parent has the right to an independent
educational evaluation at public expense if the parent disagrees with an
evaluation obtained by the public agency..." 34 C.F.R. § 300.502(b)(1).

"If a parent requests an independent educational evaluation at public
expense, the public agency must, without unnecessary delay, either – (i) File
a due process complaint to request a hearing to show that it's evaluation is
appropriate; or (ii) Ensure that an independent educational evaluation is
provided public expense." 34 C.F.R. § 300.502(b)(2)(i)-(ii).

"If a parent requests an independent educational evaluation, the public
agency may ask for the parent's reason why he or she objects to the public
evaluation. However, the public agency may not require the parent to
provide an explanation and may not unreasonably delay either providing the
independent educational evaluation at public expense or filing a due process
complaint to request a due process hearing to defend the public evaluation."
34 C.F.R. § 300.502(b)(4).

## Discussion

## Parental Interference

13

The District argues that the Parent purposefully thwarted the District's effort to offer a FAPE as part of a plan to secure tuition reimbursement at Private School 2. The District points to examples of the Parent withholding information about Private School 2, concerns about the Student, and the Student's Autism diagnosis. The District also argues that the Parent refused to make the Student available for its 2019 reevaluation. The District's ultimate argument is that the Parent should not be rewarded for a calculated effort to secure the Student's enrollment at Private School 2 at public expense.

I agree with the District that the Parent decided to send the Student to Private School 2 long before the District offered an IEP. The Parent's protestations to the contrary were not credible, and their decision to not reveal dates of documents from Private School 2 that were transmitted or accessed electronically is, more likely than not, intentional. However, the Parent's decision to send the Student to Private School 2 in advance of the evaluation and IEP processes is not fatal to the claims presented in this hearing *per se*. It was perfectly permissible for the Parent to push for a desired outcome, provided that the Parent did so in a way that did not deny the District an opportunity to provide a FAPE to the Student.

The IDEA and applicable case law set up tests for IEEs at public expense and tuition reimbursement. The District's argument about parental predetermination has merit only if the District failed any part of those tests as a result of parental interference.

### The Student Is Entitled to an IEE at Public Expense

The District completed its reevaluation on April 29, 2019 – nearly a month after the March 30, 2019 deadline established by the 2017 Settlement. This breach, in and of itself, could warrant an order requiring the District to fund an IEE. Regardless, I award an IEE at public expense on a different basis: the 2017 RR did not comply with IDEA standards.

The 2017 RR was, by the District's own admission, incomplete. As the District wrote in the 2017 RR, the its review of records revealed that new testing was necessary. Unfortunately, the District did not complete the necessary testing. Rather, it issued the 2017 RR with the information that it had: a review of records, parent and teacher input, and two rating scales. As such, the 2017 RR is missing information that the District itself considered necessary at the time.

The Parent did nothing to thwart the District's effort to reevaluate the Student. Under the terms of the 2017 Settlement, the District had a longer

period of time to evaluate the Student than the IDEA would otherwise provide. The District could have started any time after January 1, 2019. If it started at its first opportunity, the District would have had 88 days to evaluate the Student. The District did nothing during those 88 days. Instead, according to the 2017 RR, the District started the process six days after its deadline to finish the reevaluation (April 5, 2019) with a records review. The District also made no attempt to schedule the Student's testing until April 10, 2019. April 10, 2019 was a Wednesday. The District proposed to test the Student the next week, which happened to be the same week that PSSAs were administered at Private School 1. The Student's private BCBA advised the Parent against subjecting the Student PSSA testing and psychoeducational testing at the same time. As such, the Parent was justified in withholding the Student from RR testing that week.

If the District had tried more than once to schedule testing, or if the Parent consistently refused to make the Student available, the District would have a strong argument. But those are not the facts of this case. Having started its evaluation after the deadline for its completion, the District made no other effort to schedule testing.[14]

Strictly speaking, the District's reasoning for finalizing an RR that it knew was incomplete is irrelevant for IDEA purposes. Yet the District was explicit and candid about its reasoning both at the time and during the hearing. The District understood that if it failed to offer an IEP and NOREP by April 30, 2019, pendency would attach to a private school of the Parent's choice. The District was determined to meet the IEP/NOREP deadline, and so it went with what it had despite knowing the 2019 RR was incomplete.

A large amount of testimony was presented during the hearing concerning the accuracy with which the District both reported information provided by the Student's teachers from Private School 1 and interpreted the rating scales. I find that information reported in the 2019 RR is accurate and properly interpreted. I do not fault the 2019 RR for what it contains. The 2019 RR falls short for what it is missing.

The Student is awarded an IEE at public expense to remedy the District's failure to comply with IDEA mandates in its completion of the 2017 RR. The District may propose evaluators, but Parent may choose any evaluator who is qualified to conduct the type of testing that the District deemed necessary in the 2017 RR, regardless of the District's proposal (if any). The District

---

[14] The Parent requested this hearing on June 11, 2019. Any effort by the District to reschedule the testing after the hearing was requested is irrelevant to the analysis. I look at the Student's right to an IEE at public expense on the day that the hearing was requested.

15

must pay for the IEE, which must be reduced to a written report. The District obligation to fund the IEE is, however, limited to market rates for similar evaluations within its geographic area.

## The District Failed to Offer an Appropriate IEP

The District's IEP was largely based on the 2019 RR. The 2019 RR was inappropriate because the District did evaluate the Student after concluding an evaluation was necessary. Consequently, to the extent that the District's IEP was based on the 2019 RR, the IEP was also inappropriate.

Importantly, this is the *only* basis for which I find the District's IEP was inappropriate. I reject the Parent's argument that the New School is inappropriate for the Student *per se* (that is, the New School is inappropriate for the Student regardless of the IEP or NOREP). LEAs have broad discretion to make building placement and methodology choices when offering appropriate special education through an IEP. *J.L. v. North Penn School District*, 2011 WL 601621 (E.D. Pa. 2011); *P.V. v. Sch. Dist. of Philadelphia*, No. 2:11-cv-04027, 2013 U.S. Dist. LEXIS 21913 (E.D. Pa. Feb. 19, 2013). None of the evidence in this case establishes that the Student cannot learn from computer-based instruction provided as part of an appropriate special education program, or that the New School cannot be rendered appropriate through the addition of necessary supports and services. This is not to say that the computer-based instruction is best for the Student – the Parent's concerns are legitimate. Rather, the Parent has not proven that the New School is inappropriate for the Student *per se*.

I also reject the Parent's arguments that the IEP was inappropriate because it cannot be implemented in the New School, that the IEP was predetermined, that what goals it had were inappropriate, and that it failed to properly classify the Student. The District offered the IEP within the timeline set by the 2017 Settlement. The process by which the District drafted the IEP complied with IDEA procedural mandates except for those related to evaluations. The District gave the Parent a meaningful opportunity to participate in the IEP's development. The District revised the IEP in both form and substance based on parental input. The IEP included measurable, objective goals with the best baseline data available at the time (sometimes going outside of the 2019 RR to obtain the baselines). IEP spelled out what the District would do to enable the Student to meet the IEP's goals through

16

SDI and program modifications. There is no evidence that the IEP could not be implemented in the New School.[15]

The IEP was appropriate in relation to the information available to the District at the time the IEP was drafted. The problem, however, is that the District knew that it was missing information. The District concluded that a psychoeducational evaluation was necessary but did not complete one. Rather than risk pendency attaching to a private school, the District issued an IEP knowing that the information used to draft the IEP was incomplete. The District had no way to know what additional testing would reveal, and so it had no way to know if it was offering a substantively appropriate IEP.

Under *Schaffer v. Weast, supra*, the Parent must prove that the District failed to offer a FAPE – the District need not prove that its IEP was appropriate. In this case, the Parent has proven that the District had no way to know that its IEP was substantively appropriate when the District issued it. In a hyper-technical sense, proving that the District could not have known whether it was offering a FAPE and proving that the District did not offer a FAPE are different things. I find that distinction makes no difference under the unique facts of this case. The IDEA imposed an affirmative obligation on the District to offer a FAPE through an IEP. In this case, the District could not know that it was offering a FAPE through its IEP and so it could not guarantee that the Student would receive a FAPE through its offer. Consequently, the Parent was justified in rejecting the District's offer.

In making this determination, I am sensitive to the District's argument that the Parent purposefully withheld information about the Student's Autism diagnosis during the reevaluation and IEP development. Assuming that the Parent purposefully withheld this information does not change the outcome. The District drafted the best IEP it could with the information available. I do not fault the District for not knowing information that the Parent concealed. Rather, I fault the District for not evaluating the Student when it knew an evaluation was necessary. Under the facts of this case, the District's failure to evaluate resulted in an inappropriate RR that it used to draft an IEP. The IEP, therefore, is also inappropriate.

## Private School 2 is Appropriate

The Parent argues that Private School 2 serves children with profiles similar to the Student's. The Parent did not prove this argument. Above, I fault the

---

[15] At best, evidence shows that similar IEPs were not being implemented at the New School when the Parent and the Parent's consultant visited. That evidence does not prove that the offered IEP *could not be implemented* in the New School.

District for offering an IEP based on a reevaluation that the District knew was incomplete. The Parent demands an IEE at public expense to fill in the missing information. I found in favor of the Parent and ordered the IEE. The same lack of information that renders the 2019 RR and IEP inappropriate applies equally to Private School 2. The Parent cannot argue that Private School 2 fits the Student's profile after successfully arguing that the Student's profile is has not been appropriately evaluated.

The remaining evidence concerning Private School 2, however, preponderantly establishes that Private School 2 is appropriate for the Student. Specifically, the Student spent two days shadowing another child at Private School 2. The Parent and Private School 2 concluded that Private School 2 could meet the Student's needs based on that experience. The District offers no contrary evidence, or evidence suggesting that the Parent and Private School 2 should have reached a different conclusion. This small amount of uncontradicted evidence constitutes a preponderance for purposes of an IDEA due process hearing. *See Shane T. v. Carbondale Area Sch. Dist.*, No. 3:16-0964, 2017 U.S. Dist. LEXIS 163683 (M.D. Pa. Sep. 28, 2017).

## Equitable Considerations

The equities of this case do not favor a reduction in tuition reimbursement. After starting its evaluation late, the District faults the Parent for not making the Student available for testing during the one and only week that the District proposed. As discussed above, the Parent was justified in withholding the Student during that week.

Moreover, the District argues that the Parent simply "went through the motions" during the reevaluation and IEP development process without cooperating and contributing, and was content to withhold concerns (including information about the Student's Autism diagnosis) because the decision to place the Student in Private School 2 "was a *fait accompli*."[16] Bluntly, I agree with the District that the Parent made a decision to place the Student in Private School 2 well in advance of the reevaluation and IEP development processes. Under the unique facts of this case, however, that does not mitigate against tuition reimbursement. The Parent took no action that forced the District to start its evaluation after the deadline set by the 2017 Agreement expired. The Parent took no action that prevented the District from proposing an evaluation on some day that the Student did not also have PSSA testing. The Parent did not force the District to finalize the 2019 RR before it was complete or issue the IEP without sufficient

---

[16] District's closing at 15-16.

18

information. The District made those choices to avoid the pendency clause drafted into the 2017 Settlement.

The District also challenges the Parent's "10 day notice" – the demand for private school tuition sent on May 9, 2019. I agree that it would have been better for the Parent to name Private School 2 in that email. I reject the District's argument, however, that the Parent demanded tuition reimbursement before it had time to complete its evaluation. Ten days passed between the IEP team meeting and the Parent's demand. During those 10 days, the District proposed no new evaluation (as was discussed during the meeting) and did not propose completing its original evaluation. Further, I reject the District's argument that its original evaluation was still "pending" at that time. *See District's Closing* at 4. The District had issued its evaluation report, drafted an IEP based on that report, and did not propose additional dates for testing.

I caution the Parent, however, that efforts to manipulate the IEP development process by withholding information to secure the Student's placement at Private School 2 are not well taken. Had the District undertaken a greater effort to obtain the information it knew was missing, the Parent's actions would mitigate against a tuition imbuement award at least in part. While I find that the District's shortcomings are not the result of the Parent's actions, I will compel the Parent to share the results of the IEE with the District simultaneously. Were it within my authority, I would also order the Parent to share any future information provided by Private School 2 and any future private evaluations beyond the IEE ordered herein with the District upon receipt as well.

### The District Owes the Parent Tuition Reimbursement

Above, I find that all three prongs of the *Burlington-Carter* test are met. The District must reimburse the Parent for the cost of tuition at Private School 2 during the 2019-20 school year. Such payments are limited to the tuition fee written in the enrollment contract (P-38), less any scholarship, financial assistance, or other fee reduction that the Student or Parent receive or would be eligible to receive in the absence of this order.

### ORDER

1. The Student is entitled to an IEE at the District's expense. The evaluator shall be chosen in accordance with the accompanying decision. The District's expense is limited as described in the accompanying decision. Any contract that either party executes with the evaluator shall specify that the evaluator shall transmit all reports

to both parties simultaneously. If the evaluator will not agree to such terms, for all reports, whichever party receives the report first shall transmit the report to the other party immediately upon receipt.

2. The Parent is owed tuition reimbursement for the Student's tuition at Private School 2 during the 2019-20 school year. The District's expense is limited as described in the accompanying decision.

It is **FURTHER ORDERED** that any claim not specifically addressed in this order is **DENIED** and **DISMISSED.**

<u>/s/ Brian Jason Ford</u>
HEARING OFFICER

20